Trenton Dewayne Pickett v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-373-CR

TRENTON DEWAYNE PICKETT APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE COUNTY COURT OF MONTAGUE COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Trenton Dewayne Pickett (“Pickett”) appeals his conviction for violation of a protective order through two points, arguing that (1) the trial court erred by denying his motion for continuance, and (2) the evidence was legally and factually insufficient to support his conviction.  We will affirm.

II.  Factual Background

The marriage of Anita Pickett, now Anita Elliot (“Anita”), and Pickett was less than idyllic.  After Anita endured three years of physical abuse, including being grabbed by the throat, thrown across the room, and told she would be killed, a protective order was entered against Pickett on August 15, 1997, effective through August 15, 1998.  It prohibited him from: 

Committing acts of family violence against the following members or former members of the family or household:  ANITA ANN PICKETT, to-wit:  commit any act that is intended to result in physical harm, bodily injury, assault, or sexual assault, or that is a threat that reasonably places the aforesaid members in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself, or abuse, as that term is defined by Section 34.012 (1)(C)(E) and (G) of the Family Code.

From Pickett’s standpoint, there was testimony that Anita had pulled a gun on him, kicked him, thrown things at him, and threatened him.  Despite the issuance of the protective order, Anita was phoned, followed, chased, and stalked by Pickett everywhere she went, according to her testimony.  On June 30, 1998, her present husband, James Elliot (“James”) met her about 2 a.m. as she returned from work.  She then drove her car, with James in the passenger seat.  Although traffic was very light, a vehicle with its high beam headlights “on” came up behind her car.  The vehicle was a cream-colored Bronco of the same type owned by Pickett.  After she pulled over to let the Bronco pass, it passed so close to her car that she was able to see that Pickett was driving the vehicle.  The Bronco then began swerving back and forth, slowing down and accelerating, and Anita had to maneuver her vehicle to keep the cars from colliding.  At one point she passed the Bronco but was then chased at speeds of up to ninety miles an hour.  Objects were thrown from the Bronco at her car, including a full can of soft drink that broke her rear window.  After the Bronco sped ahead and went over a hill, Anita crested the hill, and the Bronco, which now had its lights off, raced after her car once she passed it.  The Bronco swerved toward her car, in an apparent attempt to hit it, but she swerved out of the way.  All during this time, Anita felt frightened and threatened, feared for her life, and believed she could be hurt or killed.  During the experience she remembered that Pickett had told her that if he could not have her, nobody was going to have her.  At trial, James was unable to identify the driver of the Bronco, although at one time he and Pickett had been best friends.  On the next two nights, July 1 and July 2, 1998, similar incidents occurred, but Anita was not able to identify the driver. 

III.  Procedural Background

Following the June 30, July 1, and July 2 incidents, Pickett was charged through an information alleging acts of family violence and that “on or about the 30
th
 day of June, 1998, defendant [Pickett] followed ANITA PICKETT in a vehicle, tried to run into her vehicle, and threw an object out of his window causing it to hit her window and break her window.”  Defendant filed a 
first
 motion for continuance of the initial April 21, 1999 trial setting, indicating he wished to be represented by counsel other than Brian Powers, his attorney at the time.  The continuance requested a resetting for May 12, 1999.  After the case was reset to the date requested, the defendant filed his 
second 
motion for continuance indicating that he still wished to be represented by other counsel and requesting a resetting for June 16, 1999.  After the trial was reset to the date requested, defendant filed a
 third
 motion for continuance, again requesting other counsel and requesting that the case be reset to “a later date.” 

On March 3, 2003, Pickett’s attorney, Mr. Powers, filed a motion to withdraw, which was granted, and according to the motion, the file was transferred to Mr. Walsh, his attorney at trial.  The case was set for trial a fourth time for June 26, 2003 and was tried before a jury, but not before yet another motion for continuance, the
 fourth
, was made orally by appellant, the denial of which is a part of the appeal in this case.  The jury found the defendant guilty of violating the protective order, and the court sentenced Pickett to ninety days’ confinement in the Montague County Jail and a one-thousand-dollar fine.

IV.  Denial of Continuance—Standard of Review

Pickett’s initial point of error is that the trial court erred by denying his fourth motion for continuance. 
 Granting or denying any motion for continuane is within the sound discretion of the trial
 court.  
Wright v. State
, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000), 
cert. denied
, 531 U.S. 1128 (2001); 
Janecka v. State
, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 825 (1997).  In order to establish an abuse of the trial court's discretion, an appellant must show that the denial of the motion resulted in actual prejudice.  
Wright
, 28 S.W.3d at 532; 
Janecka
, 937 S.W.2d at 468.

On the day of trial, June 26, 2003, Pickett’s counsel orally moved for a continuance of the trial setting.  A refusal to grant an oral motion for continuance is not a ground for reversal.  
Montoya v. State
, 810 S.W.2d 160, 176 (Tex. Crim. App. 1989); 
Carpenter v. State
, 473 S.W.2d 210, 213 (Tex. Crim. App. 1971).

The reasons articulated as to the need for the continuance were that (1) Pickett’s witnesses were not notified or consulted, (2) defense counsel was not prepared for trial, and (3) defense counsel was recovering from surgery. 

First, the defendant asserts that a “crucial defense witness” was not available to testify at trial.  Unfortunately, Pickett did not favor the trial court, nor this court, with the identity of the missing witness, the substance of the testimony of the missing witness, or an explanation of why the witness was “crucial,” or how the individual was a witness, and to what.  If a continuance is sought because of the absence of a witness, the motion for continuance must inform the court, among other things, of the name and address of the witness, the diligence used to procure the witness’s attendance, the facts expected to be proven by the witness and their materality.  
Tex. Code Crim. Proc
. § 29.06 (Vernon 1989); 
Lathem v. State
, 20 S.W.3d 63, 66 (Tex. App.—Texarkana 2000, pet. ref’d); 
Rodriguez v. State
, 896 S.W.2d 203, 207 (Tex. App.—Corpus Christi 1994, no pet.).  

Second, defense counsel never informed the court that he was not prepared for trial, which began June 26, 2003.  To show an abuse of discretion in denying a motion for continuance for this reason, it is necessary that defense counsel show specifically how the defendant was harmed by the absence of more preparation of time, which was not done.  
See Duhamel v. State
, 717 S.W.2d 80, 83 (Tex. Crim. App. 1986).  Defendant asserts on appeal that counsel was unprepared because the date of the offense was changed on the date of trial.  Again, Pickett’s counsel did not indicate to the court that he was not ready to go to trial for this reason.  The original Information alleged that appellant committed acts of family violence against Anita Pickett on October 5, 1997, in violation of the protective order, but it also alleged that the specific acts that violated the protective order were done on June 30, 1998.
(footnote: 2)  On June 11, 2003, the State sought to amend the Information, and attached to the Motion to Amend the corrected Amended Information replacing the October 5, 1997 date with the June 30, 1998 date.  The date of the original complaint also indicated that the incident was June 30, 1998.  Counsel did not object to the Motion to Amend, and on June 18 the trial court permitted the amendment by Order.  According to Texas Code of Criminal Procedure, article 1.14(b), any objection to an amendment must be made before the date of trial or it is waived and forfeited.  
Tex. Code Crim. Proc
. art. 1.14(b).  The court commented that the fourth motion for continuance was “just grasping at straws trying to get a continuance.”

Finally, defense counsel informed the potential members of the jury during voir dire that he had recently had surgery but did not urge the trial court to grant a continuance based on that reason. 

We cannot say that the trial court abused its discretion in denying the fourth requested continuance under these circumstances.  Picket’s first point is overruled.

V.  Insufficiency of the Evidence

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

T
he Texas Court of Criminal Appeals has recently restated and clarified the standard of review to be used by appellate courts in reviewing the factual sufficiency of the evidence to support a conviction.  
Zuniga v. State
, No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. April 21, 2004).  In 
Zuniga
, the court held: 

There is only one question to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? However, there are two ways in which the evidence may be insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. This standard acknowledges that evidence of guilt can “preponderate” in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another way, evidence supporting guilt can “outweigh” the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard.

Id
. 
 
To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required.  
Johnson v. State
, 23 S.W.3d 1,12 (Tex. Crim. App. 2000).  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Pickett’s principal contention with regards to the sufficiency of the evidence is that during cross examination, Anita testified that “probably on that night” she told Officer Johnson that she couldn’t tell for sure who was driving the vehicle because it was so dark.  However, her subsequent testimony indicated that at that point she was testifying about the July 1st
 incident and not the June 30th 
 
incident, the subject of the trial.  Pickett also complains that there was no evidence of communication with Anita as required under Texas Penal Code section 25.07 regarding the violation of a protective order.  
Tex. Penal Code
 § 25.07 (Vernon Supp. 2004-05). However, Pickett was prosecuted under section 25.07 of the Texas Penal Code, of which communication is not an element.
  
Id
 at
 § 25.07.

Finally, Pickett complains that there is no evidence that he committed any acts of family violence “intended to result in physical harm, bodily injury, assault, or sexual assault, or that is a threat that reasonable (sic) places the a foresaid members in fear of imminent physical harm, bodily injury, assault, or sexual assault.”  Pickett apparently ignores the testimony concerning following Anita in his vehicle at close proximity, trying to run into her car, and hitting her car with a soft drink can and breaking the window, as a result of which, she feared for her safety and her life.  A review of the evidence under both the legal and factual sufficiency standards reaches the same result—the evidence supports Pickett’s conviction.  Pickett’s second point is overruled.

VI.  Conclusion

Having overruled appellant’s points, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; WALKER and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: August 12, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
“Defendant violated the protective order in that on or about the 30
th
 day of June, 1998, Defendant followed ANITA PICKETT in a vehicle, tried to run into her vehicle, and threw an object out of his window causing it to hit her window and break her window.”